

FILED

MAY −7 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No. 11-26042-B-7 |
| | ) |
| TANGERIE M. SHELLS, | ) Adversary No. 14-2111 |
| | ) |
| | ) DC No. USA-2 |
| Debtor(s). | ) |
| _____ | ) |
| | ) |
| TANGERIE M. SHELLS, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| EDUCATION, | ) |
| | ) |
| Defendant(s). | ) |
| _____ | ) |

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The defendant, the United States acting on behalf of its
agency – the United States Department of Education, seeks
summary judgment on plaintiff Tangerie Shells' 11 U.S.C.
§ 523(a)(8) claim seeking to discharge a student loan.
Plaintiff has filed a response to the motion for summary
judgment.

Plaintiff is a 47 year-old social worker.  She has a
bachelor's and a master's degree in social work which she
financed with the subject student loan.  Plaintiff filed a
chapter 7 bankruptcy on March 11, 2011.  She received a
discharge on June 27, 2011.  Plaintiff's student loan was not
discharged under § 523(a)(8).  Plaintiff reopened her chapter 7

case on April 8, 2014.  She filed this adversary proceeding on
April 24, 2014.

Because the material facts are not in dispute and because
under those undisputed facts plaintiff cannot establish an
"undue hardship" as a matter of law, the defendant's motion for
summary judgment will be granted.

**STATEMENT OF FACTS**

The subject of this action is a student loan that plaintiff
used to finance her education and obtain a bachelor's and
master's degree in social work.  In March of 2007, plaintiff
consolidated private loans into one new $96,205.59 loan at 7.375
percent, from the United States Department of Education.
Plaintiff's student loan has now grown to $137,545.82.  The loan
continues to accrue interest at 7.375 percent ($25.72) per day.

Plaintiff requested and received an Income Contingent
Repayment ("ICR") plan with an initial monthly payment of
$772.33 beginning in December of 2008.  The ICR payment plan
required plaintiff to make loan payments based upon her income,
family size, and total amount borrowed for a period of 25 years
at which point any remaining balance would be forgiven.
Plaintiff defaulted on her first payment, obtained a series of
forbearances, and defaulted again.

Plaintiff made no payments between December 2008 and March
of 2011.  Plaintiff filed a chapter 7 bankruptcy on March 11,
2011.  Plaintiff also made no student loan payments between
March 11, 2011, to the time she received a discharge on June 27,
2011.  It was not until March 13, 2013, that plaintiff requested

and received an Income Based Repayment ("IBR") plan.  The IBR
plan required plaintiff to make loan payments based solely upon
her income over 25 years at which time the balance of the loan
would be forgiven.  Plaintiff's initial monthly payment was
either $316.62 or $321, but the difference is not material.
Plaintiff made four payments totaling $1,266.48.  She then
stopped paying and defaulted again.

Plaintiff is married with three children.  Her husband is
disabled.  Plaintiff is employed full-time by the County of
Sacramento, Children's Protective Services, and has been since
April 20, 1998.  After taxes, plaintiff reports *net* monthly
income of $5,902 – or $70,824 annually.  She receives retirement
and health benefits from her employer.  As a county employee,
plaintiff may also be eligible for a public service loan
forgiveness program which would result in the forgiveness of her
student loan in 10 years with no tax consequences.

Plaintiff reports monthly expenses of $5,861.  Of those,
the court takes special note of the following: a car payment of
$568, cable/tv of $140, cell phone of $240, a children's savings
deposit of $50, "meals out" of $175, "entertainment" of $150,
and "vacation" of $121.  Together these monthly expenses total
$1,444 and equal approximately 25 percent of plaintiff's
reported monthly expenses.  The reported monthly expenses for
"children's savings," "meals out," "entertainment," and
"vacation" alone total $496.

1 **JURISDICTION, VENUE, AND NOTICE**

2     Federal subject-matter jurisdiction is founded on 28 U.S.C.

3 § 1334.  This matter is a core proceeding that a bankruptcy

4 judge may hear and determine.   28 U.S.C. §§ 157(b)(2)(A), (I),

5 and (O).  To the extent it may ever be determined to be a matter

6 that a bankruptcy judge may not hear and determine without

7 consent, the parties nevertheless consent to such determination

8 by a bankruptcy judge.  28 U.S.C. § 157(c)(2).  Venue is proper

9 under 28 U.S.C. § 1409.

10     Notice of the motion and the hearing on the motion was

11 given to required parties.  Plaintiff responded on May 4, 2015.

12 The matter was heard on May 5, 2015. Jeffrey J. Lodge, Esq.,

13 appeared telephonically for the defendant.  Plaintiff did not

14 appear.

15

16 **APPLICABLE LEGAL STANDARD**

17     Federal Rule of Civil Procedure 56, made applicable to this

18 proceeding by Federal Rule of Bankruptcy Procedure 7056,

19 provides that summary judgment is appropriate if documents,

20 depositions, answers to interrogatories, admissions on file, and

21 declarations, if any, show that there is "no genuine issue of

22 fact and that the moving party is entitled to judgment as a

23 matter of law."  Fed. R. Civ. P. 56(a), (c); *see also Celotex*

24 *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All reasonable

25 inferences to be drawn from the underlying facts must be viewed

26 in the light most favorable to the nonmoving party.  *Matsushita*

27 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

28 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655

-4-

(1962)).

"The initial burden of showing the absence of a material factual issue is on the moving party.  Once that burden is met, the opposing party must present specific facts, and not allegations, to show that a genuine factual issue remains for trial."  *DeHorney v. Bank of America N.T.&S.A.*, 879 F.2d 459, 464 (9th Cir. 1989); *see also Celotex*, 477 U.S. at 324-325. Additionally, when the moving party does not bear the burden of proof of trial it may discharge its summary judgment burden of showing no genuine issue of material fact remains by demonstrating "there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Summary judgment is appropriate if the nonmoving party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

Student loan obligations are presumptively nondischargeable in bankruptcy absent a showing of "undue hardship."  11 U.S.C. § 523(a)(8); *Hedlund v. Educ. Resources Inst., Inc.*, 718 F.3d, 848, 851 (9th Cir. 2013).  Section 523(a)(8) states:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt-- unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend.

11 U.S.C. § 523(a)(8).

Under § 523(a)(8), the lender has the initial burden to

-5-

1 establish the existence of the debt and that the debt is an
2 educational loan within the statute's parameters.  *Roth v. Educ.*
3 *Credit Mgmt. Corp.*, 490 B.R. 908, 916-17 (9th Cir. BAP 2013)
4 (citation omitted).  Defendant has met that burden inasmuch as
5 plaintiff admitted that the student loan at issue here is a
6 student loan within the meaning of § 523(a)(8), owed to the
7 United States, with a balance of $137,890.29, and accrues
8 interest at the rate of 7.375 percent ($25.72 per day).

9     Once the lender meets its burden, the burden shifts to the
10 debtor - here the plaintiff - to prove "undue hardship."
11 *Hedlund*, 718 F.3d at 851; *Rifino v. United States (In re*
12 *Rifino)*, 245 F.3d 1083, 1087-88 (9th Cir. 2001); *Roth*, 490 B.R.
13 at 916-17.  To show of "undue hardship," the plaintiff must
14 prove that:

15         (1) she cannot maintain, based on current income and
           expenses, a "minimal" standard of living for herself
16         and her dependents if obligated to repay the loan;

17         (2) additional circumstances exist indicating that
           this state of affairs is likely to persist for a
18         significant portion of the repayment period of the
           student loans; and
19
20         (3) she has made good faith efforts to repay the
           loans.

21 *Hedlund*, 718 F.3d at 851 (citing *Brunner v. New York Higher*
22 *Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987));[1] *Educ. Credit*
23 *Mgmt. Corp. v. Mason (In re Mason)*, 464 F.3d 878, 882 (9th Cir.
24 2006).  "[T]he burden of proving undue hardship is on the debtor,
25 and the debtor must prove all three elements before discharge

26 _____

27     [1]The Circuit adopted the *Brunner* test in *United Student Aid*
   *Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111-12 (9th Cir.
28 1998).

- 6 -

can be granted." *Rifino*, 245 F.3d at 1087-88.   The plaintiff
has not satisfied - and cannot satisfy - her burden as to any of
the *Brunner* elements.

**DISCUSSION**

PLAINTIFF'S REQUEST FOR A CONTINUANCE

Plaintiff filed an untimely "rebuttal" to the defendant's
summary judgment motion on the day before the defendant's motion
was set to be heard.  Plaintiff requested a continuance so that
she could prepare another "rebuttal" to the defendant's summary
judgment motion.  Because plaintiff's response does not
demonstrate (by affidavit, declaration, or otherwise) what, if
any, additional facts exist and/or how any such additional
facts, if any, preclude summary judgment plaintiff's request for
a continuance will be denied.  *Chance v. Pac-Tel Teletrac Inc.*,
242 F.3d 1151, 1161 n. 6 (9th Cir. 2001).

The court also notes that plaintiff filed this adversary
proceeding over a year ago - on April 14, 2014.  She was
permitted to amend several times.  A scheduling allowed
plaintiff to conduct discovery through March 30, 2015.
Plaintiff cannot now complain if she failed to take advantage of
the opportunity to conduct discovery.  *Solis v. McKesson*, 2010
WL 3504807 at *2 (E.D. Cal. 2010).  Accordingly, the court will
consider defendant's motion for summary judgment.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant maintains that the plaintiff cannot show
undue hardship and that there are no triable issues of fact.

-7-

1 | All facts referenced above and stated and discussed below are
2 | undisputed.  The facts are based on the plaintiff's documents,
3 | admissions, and bankruptcy schedules which the court also treats
4 | as admissions since the schedules are signed under oath.
5 | First Prong
6 |      There is no genuine issue of material fact that the
7 | plaintiff can maintain - based on current income and expenses -
8 | a "minimal" standard of living for herself and her dependents if
9 | she is obligated to repay her student loan.  When analyzing
10 | whether a "minimal" standard of living can be maintained, "the
11 | debtor must demonstrate more than simply tight finances."
12 | *Rifino*, 245 F.3d at 1088 (citation omitted).
13 |      Plaintiff has a steady job which she has had for over
14 | sixteen years.  She is a county employ who reports a *net* monthly
15 | income of $5,902.  Her employer provides benefits.  According to
16 | the schedules plaintiff filed in her chapter 7 bankruptcy case,
17 | during the period when she was not making monthly student loan
18 | payments, plaintiff still managed to contribute $482 per month
19 | to a pension and 457B retirement plan.  Plaintiff also concedes
20 | that, as a county employee engaged in public service, she may be
21 | eligible for loan forgiveness after only ten years of repayment.
22 | As noted above and discussed below, plaintiff also has a
23 | significant amount of disposable income that she is able to
24 | divert to defendant to repay her student.
25 |      Some courts have declined to discharge student loan debt
26 | where the debtor's budget included a cable television, high car
27 | payments, high clothing expenses, and extravagant food expenses.
28 | *See United Student Aid Funds, Inc. v. Nascimento (In re*

-8-

*Nascimento)*, 241 B.R. 440, 445-446 (9th Cir. BAP 1999)(holding that a debtor's expenses were not minimal because they included a hairdresser, chiropractor, and $544 car payment); *Chapelle v. Educ. Credit Mgmt. Corp. (In re Chapelle)*, 328 B.R. 565, 570 (Bankr. C.D. Cal. 2005) (finding debtor's $100 recreation and $100 clothing expenses unreasonable). A significant number of the monthly expenses reported by the plaintiff appear excessive, unreasonable, and not necessary to allow the plaintiff to maintain a "minimal" standard of living.

Plaintiff reports that she allocates $50 per month to her children for "savings," $150 per month for "entertainment," $175 per month for "meals out," and $121 per month for "vacation." Combined, these allocations total $496. That amount exceeds plaintiff's last monthly student loan payment – even at $321 – by at least $175 per month. Diverting a portion of these "expenses" which total $496 to the defendant would still allow plaintiff to make a monthly student loan payment of $321, maintain her current standard of living, retain a reasonable monthly entertainment budget of $125, and permit the plaintiff to continue to contribute $50 per month towards her childrens' savings.[2]

In short, plaintiff cannot establish that she is unable to maintain a "minimal" standard of living for herself and her dependents if she is obligated to repay her student loan to the defendant. The undisputed facts show that minor adjustments to the plaintiff's monthly expenses would allow her to make monthly

---

[2]It would also leave untouched plaintiff's significant car payment, cell phone, and cable TV expenses.

student loan payments of $321 under the last IBR plan, retain
money for monthly "entertainment" expenses, and continue to
contribute to her childrens' savings all while maintaining her
current above-minimal standard of living which is well-above
federal poverty standards for a family of five.[3]  Because "[i]t
is the [d]ebtor's duty to adjust her lifestyle to allow her to
make the payments on her student loan[,]" *Nascimento*, 241 B.R.
at 446, the court does not consider it unconscionable to require
the debtor to redirect her income as outlined above so that she
can repay her student loan obligation.  *Id.* at 445.

Second Prong

      In order to satisfy the "additional circumstances" element
of the second prong, the debtor must show circumstances beyond
the mere current inability to pay that are likely to persist
throughout the repayment period. *Educ. Credit Mgmt. Corp v. Nys
(In re Nys*, 446 F.3d 938, 945-947 (9th Cir. 2006).  "The
circumstances need be 'exceptional' only in the sense that they
demonstrate insurmountable barriers to the debtor's financial
recovery and ability to pay."  *Id.* at 946; *Pennsylvania Higher
Education Assistance Agency v. Birrane (In re Birrane)*, 287 B.R.
490, 497 (9th Cir. BAP 2002).  Additionally, this prong looks to
the future and, to some extent, requires the court to speculate
as to whether the debtor's financial condition will improve
sufficiently to permit the repayment of her student loan
obligations.  *Birrane*, 287 B.R. at 498-99.

_____

      [3]The 2015 poverty guideline for a family of five is $28,410.
U.S. Department of Health & Human Services 2015 Poverty
Guidelines.

1    Plaintiff has produced no evidence that she faces
2  insurmountable barriers to repayment of her student loan
3  obligation, and the court can find none in the record.
4  Plaintiff is 47 years old, holds a master's degree, is steadily
5  employed, and will remain employed and employable for the
6  foreseeable future.  Plaintiff does not suffer from any mental
7  or physical disability and, with her degree, nothing prevents
8  her from seeking and obtaining higher-paying employment in the
9  education or social work field.  The court notes that
10  plaintiff's husband is disabled; however, the court finds that
11  alone is not an insurmountable barrier given the amount of
12  income available to the plaintiff and the plaintiff's ability to
13  adjust how she spends her monthly income without any impact on
14  her present lifestyle.

15    The court similarly cannot find any evidence in the record
16  that plaintiff's current inability to repay her student loan
17  obligation is likely to persist throughout the loan repayment
18  period for at least two additional reasons.  First, the monthly
19  adjustments noted above would result in an immediate realization
20  of sufficient monthly income to allow the plaintiff to make a
21  $321 monthly payment towards her student loan obligation under
22  the IBR repayment plan.  In other words, a simple adjustment by
23  the plaintiff and a reassignment of her priorities would result
24  in an immediate realization of sufficient income to repay her
25  student loan debt.  Second, as a government employee engaged in
26  a public service occupation, plaintiff will be eligible for
27  total loan forgiveness in ten years.

28    In short, plaintiff's financial situation is a product of

- 11 -

choice in spending the monthly paycheck rather than ill health, lack of education, or some other circumstance beyond her control.  In that respect, because plaintiff's purported financial woes are self-inflicted, and because plaintiff created her own current inability to pay by allocating funds that could be used for repayment to non-essential items, she is unable to prove that she has adverse financial conditions that are likely to persist during a significant portion of the repayment period. *See Furneri v. Graduate Loan Center, et al.*, 266 B.R. 447 (D. Alaska 2001).

Third Prong

The undisputed facts in the record further demonstrate that plaintiff cannot establish that she has made good faith efforts to repay her student loan.  Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses.  *Hedlund*, 718 F.3d at 852; *Birrane*, 287 B.R. at 499.  Courts also consider whether the debtor has made any payments on the loan prior to filing for discharge, *Jorgensen* v. *Educ. Credit Mgmt. Corp.*, 479 B.R. 79, 89 (9th Cir. BAP 2012), whether the debtor has sought deferments or forbearances, *East v. Educ. Credit Mgmt. Corp. (In re East)*, 270 B.R. 485, 495 (Bankr. E.D. Cal. 2001), and the timing of the debtor's attempt to have the loan discharged, *Educ. Credit Mgmt. Corp. v. DeGroot (In re DeGroot)*, 339 B.R. 201, 214 (D. Or. 2006).

Examining these factors in light of the undisputed facts, good faith efforts to repay are lacking. Plaintiff made no payments on her student loan between March of 2007 (when her private loans were consolidated with a loan from the defendant)

1 through March of 2013 (when she was approved for the IBR payment
2 plan).  After plaintiff was approved for the IBR plan in March
3 of 2013, she made only four payments and stopped paying.
4 Plaintiff maxed out deferments and defaulted multiple times.
5 That means plaintiff made zero payments on her student loan
6 before she filed bankruptcy in March of 2011 and, significantly,
7 zero payments before she received her discharge in June of 2011.

8     During the time plaintiff made no payments, *i.e.*, between
9 March of 2007 and March of 2013, plaintiff also made no effort
10 to reduce her monthly expenses.  In fact, plaintiff actually
11 *increased* expenses during the non-repayment period.  According
12 to Schedule D filed in plaintiff's chapter 7 bankruptcy case,
13 plaintiff incurred $68,000 in secured debt in October of 2009.
14 She also incurred additional unsecured debt as reflected by
15 current payments on credit cards now reported and which, if
16 discharged, would not require payment.  Plaintiff's phone bill
17 also went from $25 as reported in her bankruptcy Schedule I to
18 the $240 she now reports for cell phones, plus an additional $89
19 for "internet/phone."  And, as noted above, plaintiff elected to
20 allocate $496 per month to expenses not reasonably necessary to
21 allow her and her family to maintain a minimal standard of
22 living, *i.e.*, childrens' savings, entertainment, meals out, and
23 vacation, rather than use those funds for loan repayment.

24     In the eight years since she obtained her student loan from
25 the defendant, plaintiff has deferred, defaulted, and made a
26 total of four payments.  Although plaintiff negotiated repayment
27 plans, she failed to perform under the plans negotiated.  In
28 that respect, plaintiff's effort to repay is tantamount to no

- 13 -

1  effort at all despite plaintiff's significant discretionary
2  income that, when redirected, permits her to make at least a
3  $321 monthly payment towards repayment of her student loan.
4  Taking all these facts together, there are no material disputed
5  facts that the plaintiff has not made a good faith effort to
6  repay the student loan.  Put another way, the undisputed facts
7  establish that plaintiff made no good faith effort to repay her
8  student loan.

9

10  CONCLUSION

11      Based on all the foregoing, the defendant's motion for
12  summary judgment will be granted.

13      A separate order and judgment will enter.

14      Dated:  May 6, 2015.

15

16                          UNITED STATES BANKRUPTCY JUDGE

- 14 -

1

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

2

3          The Clerk of Court is instructed to send the attached
document, via the BNC, to the following parties:

4

Tangerie M. Shells
5       5922 Villa Rosa Way
Elk Grove CA 95758

6

Jeffrey J. Lodge
7       2500 Tulare St #4401
Fresno CA 93721

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28